IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ANTHONY AARON WHITE, | § § § | |
| *Plaintiff*, | § § | 5-18-CV-00805-XR-RBF |
| vs. | § § § | |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION[1] | § § § § § | |
| *Defendant*. | § § § | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Xavier Rodriguez:**

This Report and Recommendation concerns Plaintiff Anthony Aaron White's request for judicial review of the administrative denial of his application for disability insurance benefits under Titles II and XVI of the Social Security Act. This action was assigned to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 1(h) of Appendix C to the Local Rules, and the docket management order entered on September 29, 2017 in the San Antonio Division of the Western District of Texas. This Court has jurisdiction to review a final decision of the Social Security Administration. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

After considering White's Brief, Dkt. No. 16, the Brief in Support of the Commissioner's Decision, Dkt. No. 17, White's Reply Brief, Dkt. No. 19, the transcript of the administrative

---

[1] On June 17, 2019, Andrew Saul was sworn in as the Commissioner of Social Security. Accordingly, Saul has been substituted for the named Defendant, Nancy A. Berryhill. *See* Fed. R. Civ. P. 25(d).

proceedings ("Tr."), Dkt. No. 9, the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, the undersigned concludes that the Administrative Law Judge ("ALJ") erred in failing to classify White's brain lesion and seizures as severe. This error was not harmless; the ALJ never considered the functional limitations associated with these impairments when assessing White's residual functional capacity. The Commissioner's decision should be **REVERSED** and this matter **REMANDED** for further consideration as discussed herein.

I.   **Factual and Procedural Background**

Plaintiff Anthony White filed his application for disability and supplemental social security benefits in the fall of 2013, alleging a disability onset date of May 12, 2012, *see* Tr. 207-15, which he later amended to September 9, 2013. *See id.* 45, 68-9, 85.[2] White was 47 years old on his amended alleged onset date and 50 years old at the time of the ALJ's decision. He is an Army veteran with a four-year college degree. *See id.* 70, 207, 230. White last worked in May 2012 as a safety manager for HEB but later resigned his employment after suffering issues with his memory, concentration, and becoming agitated with peers. *See id.* 70, 229. White thereafter attempted to work in a call center but only stayed in that position for a few weeks. *See id.* 71. According to White, the sedentary position—which also required looking at a computer screen for long hours— aggravated his back pain and migraines. *See id.*

White alleged that the following impairments rendered him disabled: rheumatoid arthritis, severe depression, anxiety, and fibromyalgia. *See id.* 229. White's claims were initially

---

[2] There is an apparent minor discrepancy in the relevant date White sought benefits. White's Applications for Disability Insurance Benefits and for Supplemental Security Income, *id.* 207-15, states that he applied for benefits on October 24, 2013. The ALJ, however, asserts that White protectively filed his applications on September 9, 2013. *See id.* 45. This short time differential, however, is not material under the present circumstances.

denied on November 25, 2013, *id.* 97-117, and again on April 17, 2014, following his request for reconsideration, *id.* 119-49. White then requested and received an administrative hearing. *Id.* 166-84. He and his attorney attended the hearing on February 23, 2016, at which White and vocational expert Howard Marnan testified. *Id.* 63-95. At the hearing, White revealed that he had been diagnosed in April 2015 with a brain tumor on his left frontal lobe. *See id.* 71-72, 74 (discussing Tr. 1046-48). The tumor was found on an MRI after White complained of tinnitus of the ear, migraines, and a seizure. *See id.* 74. Follow-up MRIs in October 2015 and January 2016 revealed a stable left frontal lobe cortical/subcortical intra-axial lesion without enhancement "possibly reflecting chronic microangiopathy." *Id.* 1151, 1247. White also reported suffering a "mild seizure" two days before the hearing. *Id.* 80. At the time of the hearing White was living at the Haven for Hope Homeless Shelter. *See id.* 77.

On March 28, 2016, the ALJ denied White's claim for disability benefits. *Id.* 42-58. In her analysis, the ALJ first found that White met the insured-status requirements of the Social Security Act, and then applied the five-step sequential analysis required by the regulations. *See id.* at 45-47. At step one of the analysis, the ALJ found White had not engaged in substantial gainful activity since the alleged amended disability onset date of September 9, 2013. *Id.* 47. At step two, the ALJ found White has the following severe impairments: fibromyalgia, degenerative changes at L3-L4 through L5-S1, inferior acromial spurring of the right shoulder, migraines, sleep apnea and obesity. *Id.* 47-48. The ALJ, however, found that White's brain lesion and seizures were not severe impairments because they didn't meet the required 12-month durational period. *Id.* 48. The ALJ also found White's tinnitus wasn't severe because "[t]he record does not have any objective medical findings regarding [White's] tinnitus showing a degree of limitation that would significantly limit [White's] physical ability to perform work related activities due to

tinnitus." *Id.* Finally, the ALJ categorized White's medically determinable mental impairments of depression and anxiety as non-severe. *Id.* 48-49.

At step three, the ALJ found that none of White's impairments met or medically equaled the impairments of one of the listed impairments in the applicable Social Security regulations. *Id.* 50-51. The ALJ paid particular attention to the criteria for listings under Listing 1.04 (Disorders of the Spine), 1.02B (Major dysfunction of a Joint), and 3.10 (Sleep-related breathing disorders). She considered no listing with respect to White's migraines; the ALJ instead determined that White's medical records "do[] not document any neurological deficits related to [his] headaches." *Id.*

Before reaching step four of the analysis, the ALJ found that White has the physical residual functional capacity to:

> [L]ift and carry 20 pounds occasionally, and 10 pounds frequently; stand and walk about 6 hours in any given workday. He can only occasionally push and pull, or reach overhead with the right upper extremity. He can occasionally stoop, crouch, and climb stairs. He can crawl, kneel, and balance frequently, but cannot climb ladders or scaffolds or work around dangerous moving machinery. [White's] work should not require concentrated exposure to cold.

*Id.* 52. With respect to White's mental capacity, the ALJ determined that:

> [White] can understand, remember, and carry out simple, unskilled, entry-level work; with Specific Vocational Preparation of 2 (SVP 2). [White] can concentrate and pay attention at that level of complexity and can sustain a 40-hour workweek without an unreasonable number of additional work breaks; he can make decisions and attend to subject matter for extended periods, he can take instructions and respond appropriately to changes in a routine work environment. He can also interact appropriately with the general public, supervisors, and co-workers.

*Id.*

At step four, after considering the residual functional capacity and the testimony of the vocational expert, the ALJ determined that White was able to perform his past

relevant work as an electronics worker (Dictionary of Occupational Titles ("DOT") #726.687-010). *Id.* 56. In the alternative, the ALJ found at step five that considering White's age, educational factors, prior work experience, and residual functional capacity, as well as the testimony of the vocational expert, White could perform the following jobs existing in significant numbers in the national economy: office cleaner (DOT # 323.687-014), bench assembler (DOT #705 6.684-022), and laundry folder (DOT # 369.687-018)— positions that the DOT classifies as light and unskilled. *Id.* 57. Accordingly, the ALJ determined that White was not disabled for purposes of the Act, and therefore was not entitled to receive benefits. *Id.*

The Appeals Council denied White's subsequent request for review of the ALJ's finding. *Id.* 36-41. Accordingly, on August 3, 2018, after exhausting all available administrative remedies, White filed for judicial review. Dkt. No. 1.

## II. Legal Standards

*Standard of Review.* To review the denial of benefits, a court determines only whether the Commissioner's decision applied the proper legal standards and is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

A reviewing court will "weigh four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability;

and (4) [the claimant's] age, education, and work history." *Martinez*, 64 F.3d at 174. "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

A reviewing court does not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not a court, to resolve. *Id.* Fact findings supported by substantial evidence are conclusive; legal conclusions and claims of procedural error are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 235 (5th Cir. 1994); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479-80 (N.D. Tex. 2001).

*General Entitlement to Benefits*. The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). A claimant like White is disabled only if his physical or mental impairment or impairments are so severe that he is unable to perform his previous work and cannot—considering his age, education, and work history—participate in any other kind of substantial gainful work that exists in significant numbers in the national economy and regardless of whether such work exists in the area in which he lives, a specific job vacancy exists, or he would be hired if he applied for work. 42 U.S.C. §§ 423(a)(1), 1382c(a)(3)(B).

*Overview of the Evaluation Process and Burden of Proof*. "A claimant of disability benefits under the Social Security Act bears the burden of showing that he or she is unable to engage in 'any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to ... last for a continuous period of not less than twelve months.'" *Rodriguez v. Bowen*, 857 F.2d 275, 277 (5th Cir. 1988) (quoting 42 U.S.C. § 423(d)(1)(A)). To determine whether substantial gainful activity is possible, the pertinent regulations require a five-step sequential inquiry. *See Carr*, 133 F. Supp.2d at 479; 20 C.F.R. §§ 404.1520, 416.920.

At the first step, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452-53 (citing 20 C.F.R. § 404.1572(a)-(b)). An individual working and engaging in substantial gainful activity will not be found disabled, regardless of medical condition or age, education, and work experience. 20 C.F.R. § 404.1520(b).

Step two addresses whether the claimant has a medically determinable physical or mental impairment that is severe, or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "[A]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (quotations omitted). An individual without a "severe impairment" will not be considered disabled. 20 C.F.R. § 404.1520(c).

At step three, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 of the regulations ("the Listings") will be considered disabled without the consideration of other vocational factors. 20 C.F.R. § 404.1520(d). But if the claimant does not qualify under the Listings, then the evaluation

continues to the fourth step. Before commencing the fourth step, the claimant's residual functional capacity is assessed. This involves a "multidimensional description of the work-related abilities" a claimant retains despite medical impairments. 20 C.F.R. § Pt. 404, Subpt. P, App. 1; *see also* 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).

At the fourth step, the residual-functional-capacity assessment and the demands of the claimant's past relevant work are reviewed. 20 C.F.R. § 404.1520(f). Past relevant work constitutes either "the actual demands of past work" or "'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen,* 829 F.2d 524, 527 n.2 (5th Cir. 1987) (quoting SSR 82-61). If an individual is capable of performing the work he has actually performed in the past or as defined by the DOT, a finding of "not disabled" will be made. 20 C.F.R. § 404.1520(f).

The fifth step evaluates the claimant's ability—given residual capacities, age, education, and work experience—to perform other work. 20 C.F.R. § 404.1520(g). If an individual's impairment precludes performing any other type of work, the claimant will be found disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the evaluation process. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant satisfies her burden at each of the first four steps, the burden then shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner adequately points to potential alternative employment, the burden shifts back again to the

claimant to prove inability to perform that work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). A finding that a claimant is not disabled at any point in the five-step evaluation is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III. Analysis

At issue is the ALJ's refusal to consider White's brain lesion and seizures as severe impairments. That decision turned on the ALJ's application of the 12-month durational period. A Social Security disability claimant has the burden of proving that the claimant suffers from a disability, which is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or *which has lasted or can be expected to last for a continuous period of not less than twelve months*." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

*The 12-month requirement*. The Commissioner concedes that "the Act's twelve-month durational requirement 'applies only to the impairment,' not the functional consequences of the impairment." Dkt. No. 17 at 4 (citing *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986). The Commissioner also effectively concedes that the ALJ erred by failing to account for the fact that the lesion and seizures "can be expected to last" for a continuous period of not less than twelve months, notwithstanding that they were diagnosed fairly recently. This error was not harmless and requires remand. White's other points of error therefore need not be addressed.

Nothing in White's medical records suggests White's brain lesion is temporary. Although the ALJ observed that White was taking medication to control his seizures, *see* Tr. 48, he had only been prescribed the medication shortly before the hearing, *see id.* & 75. Accordingly, there was insufficient evidence before the ALJ to suggest that White's seizures reasonably could be remedied or controlled by medication. *Cf. Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988)

9

(recognizing that where an impairment "reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability"). Further, in determining whether the durational requirement is met, "[t]he critical date is the actual onset of the impairment, not the date of diagnosis." *Berset v. Astrue*, No. 5:11-CV-00194-BG, 2012 WL 3578597, at *6 (N.D. Tex. Jul. 30, 2012*), report and recommendation adopted*, 2012 WL 3578603 (N.D. Tex. Aug. 20, 2012). Accordingly, the fact that White's brain lesion wasn't detected until April 2015 doesn't necessarily mean it wasn't present before.

*Harmlessness.* To obtain remand, White must show that the ALJ's error in refusing to consider the lesions and seizures severe was harmful. *See Gills v. Colvin*, No. 3:11-CV-2962-BH, 2013 WL 1294651 *19 (N.D. Tex. 2013) (noting, "application of harmless error analysis is appropriate in cases where the ALJ proceeds past step 2 in the sequential evaluation process"). Because on this record, it is not "inconceivable that a different administrative conclusion would have been reached absent the error," White has met his burden to show harmful error requiring remand. *Id*.

"[T]o meet the severity threshold in the Fifth Circuit, the claimant need only make a *de minimis* showing that his impairment is severe enough to interfere with his ability to do work." *Dell-Wilkerson v. Astrue*, No. 108-CV-0130-CECF, 2010 WL 931884, at *3 (N.D. Tex. Mar. 12, 2010) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 n. 5 (5th Cir. 1992)). Although "[a] mere diagnosis is insufficient to establish that an impairment is severe,"[3] the ALJ also has a duty to "fully and fairly develop the facts relative to a claim for disability benefits." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). Faced with White's recent MRIs, White's seizures, and testimony

---

[3] *Poole v. Berryhill*, No. CV 16-16393, 2017 WL 4005599, at *8 (E.D. La. Jul. 19, 2017), *report and recommendation approved sub nom.* 2017 WL 3991795 (E.D. La. Sept. 11, 2017); *see also Lewis v. Colvin*, No. 3:14CV137-CWR-LRA, 2015 WL 5224366, at *2 (S.D. Miss. Jul. 16, 2015*), report and recommendation adopted*, 2015 WL 5224387 (S.D. Miss. Sept. 8, 2015).

from White that his brain tumor affected his memory, concentration, and ability to interact with peers in a work setting, the ALJ should have either contacted White's medical sources to determine how White's brain lesion and seizures would affect his ability to engage in substantial gainful activity or referred him to a neurologist for a consulting exam.[4] Indeed, in discounting the effect of White's migraines on his residual functional capacity, the ALJ relied on the fact that a March 2015 CT scan of White's head revealed no evidence of acute intracranial abnormality. Tr. 55. Such a finding is directly contradicted by White's later MRIs. Further, in assessing White's residual functional capacity, the ALJ gave great weight to the opinions of state agency consultants—physicians who did not have access to White's subsequent medical records reflecting a brain lesion and seizures. *See id.* 56.

Finally, shortly before White's hearing he was hospitalized for major depressive disorder with a secondary diagnosis of schizoaffective disorder for a week-long period after reporting thoughts of suicide with a plan and reports of hearing voices. *See id.* 1188, 1193, 1221. Although the trigger of White's mental health issues is unclear, and the ALJ ultimately found the issues didn't qualify as severe, the ALJ doesn't appear to have considered the effect of White's major

---

[4] *See Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995) (recognizing that "[u]sually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing" and remanding case where the record established that the plaintiff had a problem with his back but there was no evidence—other than the plaintiff's testimony—regarding the effect on the plaintiff's ability to work); *Guidry ex rel. C.N.H. v. Colvin*, No. 12-CV-3150, 2014 WL 4369647, at *10 (W.D. La. Sept. 1, 2014) ("When the existing medical evidence is inadequate to make an informed disability determination, the Commissioner has a duty to develop the record by recontacting a claimant's medical sources or by referring the claimant for a consulting exam. If the ALJ does not have before him sufficient facts on which to make an informed decision, his decision is not supported by substantial evidence") (quotations omitted); *Jessee v. Barnhart*, 419 F. Supp. 2d 919, 933-34 (S.D. Tex. 2006) ("Even through the ALJ does not have the burden of proof at the first four stages, the ALJ does have a duty to fully and fairly develop the facts relevant to a claim for benefits. The failure by the ALJ to comply with this duty to develop the record constitutes error and results in a decision that is not supported by substantial evidence.") (citations omitted).

depressive and schizoaffective disorder in assessing his mental residual functional capacity. *See Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011) ("In determining the RFC [residual functional capacity], the Commissioner must consider all of a claimant's impairments, including those that are not severe.").

For all these reasons, it's conceivable that the ALJ could have reached a different determination at steps four and five absent the aforementioned step-two error. Accordingly, the step-two error is not harmless. *See, e.g.*, *Corbitt v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-558-CWR-LRA, 2013 WL 603896, at *5-6 (S.D. Miss. Feb. 19, 2013) (remanding case where the "ALJ's decision show[ed] that he did not seriously consider the specific problems" that the claimant's "diabetes create[d]" either at step two or "in the remainder of the five-step evaluation process to justify a finding of harmless error").

*Recommended Remand Instructions*. For these reasons, this matter should be remanded to the Commissioner to fully assess White's residual functional capacity based on all of White's limitations as set forth in the entire administrative record. To the extent the ALJ finds the medical evidence in the record inadequate regarding the functional limitations associated with White's brain lesion, seizures, and major depressive and schizoaffective disorder, the ALJ has a duty to seek additional information on the issue. *See, e.g.*, *Ripley*, 67 F.3d at 557; *Hill v. Astrue*, No. 1:09–CV–165–SAA, 2010 WL 2362129, at *4 (N.D. Miss. Jun. 10, 2010) (discussing the Commissioner's "affirmative duty" to seek additional information to reach a decision) (citing 20 C.F.R. §§ 404.1512(e) and 416.912(e)). If necessary, the ALJ should hold another hearing and obtain new vocational expert testimony.

In the interests of judicial efficiency, the undersigned recommends a remand broad enough to allow the ALJ to also consider White's other points of error, to the extent appropriate.

Whether White's brain tumor or seizures meet or medically equal the listing for disability is a topic that could be appropriate to explore on remand . *See Lee v. Berryhill*, No. 4:17-CV-03103, 2018 WL 3636219, at *3 (S.D. Tex. Jul. 30, 2018 ("An ALJ has a duty to analyze a claimant's impairments under every applicable listing."). The same is true of White's argument that the medical evidence establishes he is unable to engage in many of the postures included in the ALJ's physical residual-functional-capacity assessment. Finally, the ALJ may wish to further review the administrative record and fully develop the findings regarding the proper weight afforded to all the medical opinions of record, including the opinion of Dr. John Huff, in accordance with the so-called treating-physician's rule.[5]

## IV. Conclusion and Recommendation

For the reasons discussed above, the undersigned recommends that the Commissioner's decision that White is not disabled be **REVERSED,** pursuant to sentence four of 42 U.S.C. § 405(g), and that this case be **REMANDED** to the Commissioner for further consideration consistent with the instructions provided herein.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as

---

[5] The Social Security Administration published a new rule, applicable to claims filed on or after March 27, 2017, that eliminated the treating-physician rule. *See* 20 C.F.R. § 404.1520c. Because White's claims were filed prior to this date, the pre-amendment version of the rule applies here. *See* 20 C.F.R. § 404.1527 ("For claims filed . . . before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.").

13

a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 26th day of June, 2019.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE